IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELVIN N. KELLUM, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 11-226-SLR |
| | ) |
| DAVID PIERCE, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents.[1] | ) |

---

Melvin N. Kellum. Pro se petitioner.

Elizabeth R. McFarlan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

**MEMORANDUM OPINION**

March 1 , 2014
Wilmington, Delaware

---

[1]Warden David Pierce replaced former Warden Perry Phelps, an original party to the case. See Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Melvin N. Kellum ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 3) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL[2] AND PROCEDURAL BACKGROUND

On March 10, 2006, Adrien Turner, a drug dealer, was sitting on an electrical box on a street corner in Wilmington. His brother and several other people were present. Petitioner approached Turner, and the two started to talk. When the talk turned into an argument, petitioner pulled out a gun and shot Turner in the thigh. Turner fell off the electrical box, and petitioner shot him four more times in the waist area. Petitioner then fled, and Turner was taken to the hospital. Turner identified petitioner twice from photo arrays. On May 1, 2006, petitioner was indicted and charged with first degree attempted murder, possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited ("PDWPP").

Petitioner's Superior Court jury trial began on February 27, 2007. At trial, Turner recanted his story and denied that petitioner shot him. Turner explained that he had identified petitioner to the police because he had some issues with petitioner concerning a woman. Turner claimed he was shot by an unknown stranger. Turner's brother was unable to identify petitioner as the shooter.

---

[2]The facts are summarized from the Delaware Supreme Court's description in *Kellum v. State*, 950 A.2d 659 (Table), 2008 WL 2070615, at *1 (Del. May 16, 2008), and from the Superior Court's description in *State v. Kellum*, 2010 WL 20129059, at *1-2 (Del. Super. May 19, 2010).

During the trial, petitioner presented an "alibi defense" consisting of testimony

from his sister and mother. Both witnesses testified that petitioner was at his sister's

residence when the shooting occurred. Petitioner's mother testified as follows:

> Prosecutor: And your remark [to defense counsel] that we had to sit down and really think about where we were that day, who is we?
>
> Mother: Oh, just – oh, I was – my husband and all, we were just trying to figure out that day, where was Melvin that day. You know, was he with me? Because, basically, he wasn't out of the house unless he was with me or with my daughter.
>
> Prosecutor: So you all got together to try figure out where he was that day?
>
> Mother: Now, we all didn't get together, a few of us got together and I was trying to remember where was Melvin that day. And I took it back and I remembered that day, that was the day I dropped him off at Rashieda's house.

Petitioner's sister corroborated this story and testified as follows:

> Defense Counsel: And what – describe that for me please. Were you able to recall what you did that day, the day of the shooting?
>
> Sister: Yes.
>
> D. Counsel: And what was it you were doing that day on the 10th of March?
>
> Sister: Actually, I was at home. My brother came over that morning.
>
> D. Counsel: How did he get to your house?
>
> Sister: My mother brought him over.
>
> D. Counsel: And why was it that he went to your residence that day?
>
> Sister: She told me she had some stuff she had to do and he wanted to come over my house for a while while she handled her business.
>
> D. Counsel: At the time – at that time, and today, if you want to comment on that what was your relationship with your brother Melvin? How would you describe your relationship with him?
>
> Sister: Very close.

2

D. Counsel: Did you spend with him either at your house or other locations during that time?

Sister: Yes.

\*   \*   \*

D. Counsel: All right. What did you do with him that day that you can recall and advise the jury what you remember about his participation with you that day?

Sister: Actually, when he first got there, I made breakfast. We watched a little TV. After that, I remember him playing a video game for a little while before he left.

\*   \*   \*

D. Counsel: What else can you tell us about that day? During the day, what did you do with him?

Sister: Pretty much that was it. We just hung out a little bit, a little conversation, mainly watched movies, played video games. That was about it.

D. Counsel: Did you leave him at any time? Did you go out of the house at any time and leave him there by himself?

Sister: No.

D. Counsel: You indicated you had to work about – you said in the afternoon?

Sister: Yes, 3:00 p.m.

D. Counsel: 3:00 p.m.?

Sister: Yes.

D. Counsel: And when you went to – what time do you normally prepare to go to work? I don't know whether you put a uniform on or do something like that or shower and go to work, did you do that that day?

Sister: Yes.

D. Counsel: What time did you begin to prepare to get to work?

Sister: I'm going to say maybe around – I know it was in the afternoon, maybe like two o'clock p.m., something like that.

3

D. Counsel: Was he still there at two o'clock p.m.?

Sister: Yes.

On cross-examination, petitioner's sister testified:

Prosecutor: And did you get together with your mother and father and try to figure out where [petitioner] was the day of the shooting?

Sister: She gave me a phone call later that afternoon, later that day.

Prosecutor: And what did she say?

Sister: She let me know he was arrested and she came – they came to the conclusion that when she thought about where everyone was at – well, not everyone, but where petitioner was that day, he was at my house that morning.

Prosecutor: Is that what she told you?

Sister: That's not only what she brought to my attention, but he was at my address that morning.

Prosecutor: And –

Sister: I recalled it also.

Prosecutor: You recall it also?

Sister: Yes.

Prosecutor: What day was it?

Sister: March the 10th.

Prosecutor: What day was it?

Sister: I'm not sure, it was a year ago.

On March 2, 2007, a Delaware Superior Court jury found petitioner not guilty of attempted murder, but guilty of the lesser-included offense of first degree assault and both weapons charges. See Kellum, 2010 WL 2029059, at *2. On March 13, 2007,

4

petitioner filed a motion for judgment of acquittal, which the Superior Court denied. *See State v. Kellum*, 2007 WL 969033 (Del. Super. Mar.30, 2007)

The Superior Court sentenced petitioner to eight years in prison followed by probation. (D.I. 19 at 1) Petitioner filed a direct appeal and, while the appeal was pending, he filed a motion for modification of sentence. *Id.* The Superior Court denied the motion on October 22, 2007, and the Delaware Supreme Court affirmed petitioner's convictions and sentence on May 16, 2008. *See Kellum v. State*, 2008 WL 2070615 (Del. May 16, 2008).

In January 2009, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting five grounds for relief with corresponding ineffective assistance of counsel claims: (1) the joinder of the PDWPP charge prejudiced his rights to a fair trial; (2) the court's failure to dismiss a juror who knew one of the State's witnesses amounted to prejudicial error; (3) the in-court identification of petitioner by Detective David Simmons violated his right to a fair trial; (4) the failure to disclose a videotaped interview of an eyewitness to the defense amounted to prejudicial error; and (5) the court's failure to give an unrequested alibi instruction to the jury was "plain error." *See Kellum,* 2010 WL 2029059. Petitioner's trial counsel filed affidavits in response to petitioner's allegations of ineffective assistance. After the State filed its response, the Superior Court directed the State to file a supplemental response regarding petitioner's alibi instruction claim. In May 2010, the Superior Court denied petitioner's Rule 61 motion. *Id.* Petitioner appealed and,

5

after briefing and oral argument, the Delaware Supreme Court affirmed that decision. *See Kellum v. State,* 12 A.3d 1154 (Table), 2011 WL 213053 (Del. Jan. 21, 2011).

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer (D.I. 16), arguing that the court should deny the application because the claims are either procedurally barred or do not warrant relief under § 2254(d).

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although

6

treated as technically exhausted, such claims are nonetheless procedurally defaulted.
*Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly,
if a petitioner presents a habeas claim to the state's highest court, but that court "clearly
and expressly" refuses to review the merits of the claim due to an independent and
adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See*
*Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless
the petitioner demonstrates either cause for the procedural default and actual prejudice
resulting therefrom, or that a fundamental miscarriage of justice will result if the court
does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999);
*Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a
petitioner must show that "some objective factor external to the defense impeded
counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S.
478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the
errors during his trial created more than a possibility of prejudice; he must show that the
errors worked to his actual and substantial disadvantage, infecting his entire trial with
error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has
probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at
496, then a federal court can excuse the procedural default and review the claim in
order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S.
446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage
of justice exception applies only in extraordinary cases, and actual innocence means

7

factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or

8

state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). The Supreme Court recently expanded the purview of the *Richter* presumption in *Johnson v. Williams*, 133 S.Ct. 1088 (2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id.* at 1095-96. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at 1091-92.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following four grounds for relief: (1) defense counsel provided ineffective assistance by failing to request and argue for an alibi instruction; (2) the trial court violated his due process rights by failing to *sua sponte*

9

instruct the jury regarding his alibi defense; (3) the prosecutor engaged in misconduct by making prejudicial remarks during closing argument and by failing to provide the defense with a videotaped statement of an eyewitness in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (4) appellate counsel provided ineffective assistance by failing to raise the claims petitioner requested to be raised.

## A. Claim One: Ineffective Assistance of Trial Counsel

In claim one, petitioner contends that defense counsel provided ineffective assistance by failing to request and argue for an alibi instruction for an alibi defense that was presented at trial through the testimony provided by his sister and mother. The Superior Court denied this claim as meritless, and the Delaware Supreme Court summarily affirmed that decision. In these circumstances, the Delaware Supreme Court's affirmance of the Superior Court's denial of the claim constitutes an adjudication on the merits. Therefore, petitioner will only be entitled to habeas relief if the Delaware Supreme Court's denial of claim one was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's

10

error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Superior Court correctly identified the *Strickland* standard applicable to petitioner's ineffective assistance of counsel claim. Thus, the Delaware Supreme Court's affirmance of that decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine if the Delaware state courts' denial of claim one as meritless involved a reasonable application of *Strickland*. When performing this inquiry, the court must review the Delaware state court decisions with respect to petitioner's ineffective assistance of counsel claim through "doubly deferential" lens. *See Harrington*, 131 S.Ct. at 788. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

11

Settled Delaware law requires defense counsel, under certain circumstances, to request an alibi instruction, and also requires the trial court, in more limited circumstances, to give an alibi instruction *sua sponte*. *See Gardner v. State*, 397 A.2d 1372 (Del. 1979). In this case, petitioner argues that the testimony provided by his mother and sister constituted substantial evidence under *Gardner* such that counsel erred by not requesting an alibi instruction. The Superior Court rejected this argument, specifically holding that counsel's failure to request an alibi instruction did not constitute deficient performance and that it did not prejudice petitioner.

In deciding to deny the instant ineffective assistance of counsel claim, the Superior Court discussed how, during petitioner's trial, defense counsel argued to the jury that "this case is a question of identification. It is simple. It is identification." *Kellum*, 2010 WL 2029059, at \*6. Defense counsel requested, and the trial court gave, the following identification instruction:

A matter which has been raised in this case is the identification of the defendant. You must be satisfied beyond a reasonable doubt that the defendant has been accurately identified, that the defendant was indeed the one that did the act charged, and that this act actually took place before you may find him guilty of any crime. If there is any reasonable doubt about his identification, you must give him the benefit of such of doubt and find him not guilty.

*Id.* at \*7. In turn, defense counsel made the following extensive argument about the identification instruction:

One of [these jury instructions] is a – is a – is an indication which has – or is a rule, a Court directive and a rule to you which is very important because – particularly in this case it's very important, because it goes to the essence of the matter that you've got to consider. And that is called identification of the defendant. The key issue here, the identification. And it says – this is short, I'll read it to you very quickly. "A matter which has been raised in this case is the identification of the defendant. You must be satisfied beyond a reasonable doubt" – not a chance, a hunch, it's simply possible, 50-50, that's not reasonable doubt –"that the Defendant has been accurately identified, that the Defendant

12

was, indeed, the one that did the act charged and that this act actually took place before you may find him guilty of any crime. If there is any reasonable doubt about his identification, you must give him the benefit of such doubt and find him not guilty.

*Id.* Referring to this record, the Superior Court concluded that alibi was not petitioner's sole defense, and that his defense at trial could properly be labeled as one of "identification." In turn, the Superior Court found that "counsel's actions were reasonable because, as a matter of trial tactics, the defendant's attorney may not wish to request an alibi instruction in particular instances . . . [such as when] it would tend to concentrate attention upon this defense and divert consideration from unrelated weaknesses in the state's case." *Kellum,* 2010 WL 2029059, at *9. The Superior Court explained that the two witnesses who provided petitioner's alibi defense had "certain credibility problems," in that they were related to petitioner, each witness was present in the courtroom when the other testified, and both had prior convictions for dishonesty. *Id.* at *7. After noting that no non-family members testified to substantiate petitioner's whereabouts, the Superior Court opined that "counsel acted reasonably in focusing on the stronger identification defense and appropriately chose not to call greater attention to [petitioner's] two potentially biased witnesses." *Id.* at *9.

The Superior Court also determined that petitioner did not suffer prejudice as a result of counsel's failure to request an alibi instruction, because the identification instruction provided by the trial court was tantamount to an alibi instruction. The Superior Court explained that, "an alibi instruction, if given, would likely have stated essentially as follows":

A defense raised by the defendant in this case is that of alibi. This is a recognized defense under the law. The defendant contends that he was somewhere other than at the place where the crime is alleged to have been

13

committed and when it is alleged to have been committed. If the evidence on this point raises in your mind a reasonable doubt as to the defendant's guilt, you must give him the benefit of that doubt and return a verdict of not guilty.

*Kellum*, 2010 WL 2029059, at *8. The Superior Court then noted that "the identification instruction and the alibi instruction are similar. Both instructions instruct the jury that it must be satisfied that petitioner was the actor beyond a reasonable doubt." *Id.* at *9.

For the reasons stated above, the Delaware Superior Court held that claim one "was deficient when analyzed under the *Strickland* test." *Kellum*, 2010 WL 2019059, at *10. The Delaware Supreme Court affirmed that judgment.

Turning back to this court's remaining inquiry under § 2254(d)(1), the court will start its analysis with the prejudice prong of *Strickland* because, if petitioner cannot establish prejudice, the court need not reach the issue of counsel's performance. *See Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006). In petitioner's case, the jury was correctly instructed concerning the State's burden of proving every element of each offense. The jury was read the indictment by the trial judge, and then the judge explained accurately and in detail the State's burden of proof for each charge. At the end of each instruction on each particular charge, the court instructed the jury that if "you have a reasonable doubt as to any element of this offense, you must find the defendant not guilty." Finally, the trial court's detailed identification instruction specifically told the jury that it was the State's burden to prove the charges beyond a reasonable doubt. In these circumstances, and looking through the doubly deferential lens applicable on habeas review, the court concludes that the Delaware state courts reasonably applied *Strickland* in holding that there was not a reasonable probability that,

14

but for counsel's failure to request an alibi instruction, the result of petitioner's trial would have been different. Accordingly, the court will deny claim one.

### B. Claim Two: Trial Court's Failure to *Sua Sponte* Instruct on Alibi

Petitioner's next claim is that his due process rights were violated because the trial court failed to *sua sponte* instruct the jury on an alibi defense. In his Rule 61 motion, petitioner cited *Gardner* and argued that the trial court's failure to give an unrequested alibi instruction was plain error in violation of his due process rights. The State argued that the claim was procedurally defaulted because petitioner did not present the issue on direct appeal. When analyzing the claim, the Superior Court explicitly stated that "this ground for relief is not procedurally barred because it meets the requirements of Rule 61(i)(5)." *Kellum*, 2010 WL 2029050, at *6. Because the Delaware Supreme Court summarily affirmed that decision, the court must view the instant claim as having been adjudicated on the merits. Therefore, petitioner will only be entitled to relief if the Delaware state court decisions were either contrary to, or an unreasonable application of, clearly established federal law.

Here, petitioner has not cited, and the court has not discovered, any Supreme Court decisions requiring a trial court to instruct the jury regarding a defendant's alibi defense when the defendant has not requested such an instruction. As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive a petitioner of due process of law. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughton*, 414 U.S. 141 (1973). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional

15

validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."[3] *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Notably, an omitted instruction is less likely to be prejudicial than a misstatement of the law, which means that a petitioner seeking habeas relief based on a trial court's failure to give a particular instruction has an "especially heavy" burden of demonstrating that the failure to give the instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment. *Id.* at 154-55. The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial. *See United States v. Frady*, 456 U.S. 152, 169 (1982).

Given the lack of Supreme Court holdings squarely addressing a trial court's duty to *sua sponte* instruct the jury on alibi (or another defense) in the absence of a defendant's request for such an instruction, the court concludes that the Delaware state court decisions were not contrary to, or an unreasonable application of, clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 125-6 (2008); *Carey v. Musladin*, 549 U.S. 70, 76-7 (2006). Nevertheless, even if the court were to consider

---

[3]The Third Circuit follows the well-accepted rule among federal circuit courts that trial courts are under no duty to provide instructions on alibi in the absence of a request. *See United States v. Stirone*, 311 F.2d 277, 282 (3d Cir. 1962). Consequently, a trial court's failure to *sua sponte* instruct on an affirmative defense, including alibi, is reviewed only for plain error. *See Gov't of the V.I. v. Lewis*, 620 F.3d 359, 370 n.10 (3d Cir. 2010). Notably, the majority of federal courts have held that the failure to give an unrequested alibi instruction should not be deemed "plain error" where the jury is otherwise correctly instructed concerning the government's burden of proving every element of the crimes charged and the defendant is given an opportunity to present his alibi defense in closing argument. *See United States v. McCall*, 85 F.3d 1193 (6th Cir. 1996). In turn, many federal habeas decisions have recognized that a constitutional error is not caused by a court's failure to *sua sponte* instruct on alibi when the jury was otherwise properly charged on burden of proof and the alibi evidence was presented at trial. *See Parreno v. Annetts*, 2006 WL 689511, at *14 (S.D.N.Y. Mar. 20, 2006)(collecting cases).

16

petitioner's argument, he has failed to satisfy the general principles articulated in *Estelle, Cupp,* and *Kibbe,* because he has not demonstrated that the failure to give an alibi instruction was so prejudicial as to have rendered his trial unfair. As previously explained by the court in its discussion for claim one, the failure to provide an alibi instruction did not prejudice petitioner because: the jury was correctly instructed concerning the State's burden of proving every element of each offense; the judge explained accurately and in detail the State's burden of proof for each charge; at the end of each instruction on each particular charge, the court stated that if "you have a reasonable doubt as to the element of this offense, you must find the defendant not guilty"; and the trial court provided a detailed "identification instruction," which was tantamount to an alibi defense and, as noted by the Superior Court during petitioner's Rule 61 proceeding, accomplished the same purpose as an alibi instruction.

In addition, petitioner was given a full opportunity to present his alibi defense, and the relevant alibi evidence was thoroughly argued in closing. Specifically, defense counsel recounted the substance of the testimony provided by petitioner's mother and sister, reconciled their potential biases toward petitioner, emphasized their "overall . . . degree of consistency," and argued that the time card from the employer of petitioner's sister that was entered into evidence corroborated her alibi testimony.

For these reasons, the court concludes that petitioner has not met his "especially heavy" burden of showing that the omission of an alibi instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 72. Accordingly, the court will deny claim two. *See c.f. Echols v. Ricci,* 492 F. App'x 301, 313 (3d Cir. 2012)(holding that a district court properly denied an ineffective assistance

17

of counsel claim because "there is no constitutional requirement for an alibi instruction and [] the instructions given by the trial court in this case made it clear that the government had to prove beyond a reasonable doubt that [petitioner was in the location of the shooting].")

## C. Claim Three: Prosecutorial Misconduct

In claim three, petitioner contends that the prosecutor made prejudicial remarks during closing argument. He also contends that the prosecutor failed to disclose to the defense a videotaped interview of an eyewitness, Jamar Turner, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The record reveals that petitioner did not present either sub-argument of this prosecutorial misconduct claim to the Delaware Supreme Court on direct appeal or on post-conviction appeal.[4] At this juncture, Delaware Superior Court Criminal Rule 61(i)(2) and (3) would bar petitioner from presenting these issues to the Delaware state courts in a new Rule 61 motion in order to have an opportunity to appeal any adverse decision to the Delaware Supreme Court. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because Petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, petitioner's prosecutorial misconduct claim is procedurally defaulted,

---

[4]Petitioner did include his argument regarding the *Brady* violation in his Rule 61 motion to the Superior Court, which was denied. Unfortunately, it is unclear if the Superior Court denied the *Brady* claim as meritless or as procedurally barred by Rule 61(i)(3). The court, however, does need to consider this issue because, as discussed in the body of this opinion, petitioner's failure to present the *Brady* argument to the Delaware Supreme Court on post-conviction appeal resulted in a procedural default for federal habeas purposes.

meaning that the court cannot review its merits absent a showing of cause and prejudice, or that petitioner is actually innocent.

In an attempt to establish cause for his default of the prosecutorial misconduct claim, petitioner asserts ineffective assistance of both trial counsel and appellate counsel. The record reveals that petitioner did not present an ineffective assistance of trial or appellate counsel argument concerning the instant prosecutorial misconduct claim to the Delaware Supreme Court on post-conviction appeal. As a result, this particular ineffective assistance of counsel claim is itself procedurally defaulted and cannot constitute cause for petitioner's default of the substantive prosecutorial misconduct claim.

In a separately filed memorandum in support, petitioner attempts to establish cause for his default of the ineffective assistance of trial and appellate counsel claim by blaming his post-conviction counsel's failure to include that claim in his post-conviction appeal.[5] This argument is unavailing. Although the recent Supreme Court case *Martinez v. Ryan* recognizes that the ineffective assistance of counsel during **initial collateral review proceedings** may establish cause sufficient to excuse the procedural default of a claim of ineffective assistance of trial counsel, the *Martinez* rule "does not concern attorney errors in other kinds of proceedings, including **appeals from initial-review collateral proceedings**, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012)(emphasis added). In other words, petitioner cannot establish

---

[5]Petitioner's Rule 61 motion asserted four claims of ineffective assistance of counsel, one of which alleged that trial and appellate counsel were ineffective for failing to raise a *Brady* claim during trial or on direct appeal. However, petitioner did not include the particular ineffective assistance/*Brady* claim at issue here in his Rule 61 appeal.

cause for his failure to exhaust his ineffective assistance of trial and appellate counsel claim by asserting ineffective assistance of post-conviction counsel on post-conviction appeal.

In the absence of cause, the court will not address the issue of prejudice. Additionally, the court concludes that petitioner's default should not be excused under the miscarriage of justice exception to the procedural default doctrine, because petitioner has not provided new reliable evidence of his actual innocence.

For all of the aforementioned reasons, the court will deny claim three as procedurally barred from federal habeas review.

### D. Claim Four: Ineffective Assistance of Appellate Counsel

In his final claim, petitioner contends that "appellate counsel" failed to argue issues petitioner wished to be presented "on appeal." The State's answer asserts that this claim is too vague and unsupported to warrant relief. The State also contends that the claim is procedurally barred from federal habeas review because petitioner did not present on post-conviction appeal an argument that appellate counsel failed to argue issues petitioner requested to be raised. Apparently in reply to the State's procedural default argument, petitioner filed an additional memorandum in support explaining that claim four is alleging ineffective assistance of counsel on post-conviction appeal, because his post-conviction counsel failed to include in his Rule 61 appeal three of the four claims that were included in his Rule 61 motion to the Superior Court. Thus, although claim four in petitioner's original application is titled "ineffective assistance of appellate counsel," petitioner's subsequent clarification reveals that claim four actually alleges "ineffective assistance of appellate counsel on post-conviction appeal."

20

This clarification, however, does not aid petitioner in his quest for relief. Post-conviction counsel's failure to include claims on post-conviction appeal does not assert a cognizable issue for habeas review, because petitioner does not have a Sixth Amendment right to counsel in a post-conviction appeal. *See Martinez*, 132 S.Ct. at 1315 (where the Supreme Court explicitly refrains from recognizing or creating an automatic constitutional right to counsel in collateral proceedings). As such, to the extent petitioner is asserting an independent claim alleging the ineffective assistance of post-conviction counsel on post-conviction appeal, the court will deny the claim for failing to assert a proper basis for federal habeas relief.

To the extent the court should consider claim four as alleging that the attorney representing petitioner during his direct appeal provided ineffective assistance by failing to present arguments requested by petitioner, the claim is similarly unavailing. Petitioner did not exhaust state remedies for this argument because he did not present the argument to the Delaware Supreme Court in his Rule 61 appeal. At this juncture, petitioner cannot return to state court to exhaust this claim, because it would be barred under Rule 61(i)(1) as untimely and under Rule 61(i)(2) as repetitive. *See Lawrie*, 9 F. Supp. 2d at 453 (Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding). As such, this claim is deemed exhausted but procedurally defaulted. For the reasons already discussed with respect to claim three, petitioner's attempt to establish cause for the default by blaming post-conviction counsel for not raising the claim on post-conviction appeal is unavailing. In the absence of cause, there is no need to address the issue of prejudice. Moreover, there is no basis for excusing the default in

21

order to avoid a miscarriage of justice.  Accordingly, the court will alternatively deny claim four as procedurally barred from federal habeas review.

### E. Pending Motion

During the pendency of this proceeding, petitioner "renewed" his previously denied motion for representation by counsel.  (D.I. 29)  Given the court's conclusion that it must deny the pending application in its entirety, the court will deny as moot petitioner's renewed request for representation.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied.  Reasonable jurists would not find this conclusion debatable.  Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

22

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.